## HIRAM STEVENS *versus* OSCO A. ELLIS.

A, the owner of a colt, let B have it for a mare, on condition that if, after trial of the mare, and inquiries as to the title of B, A was satisfied, they would make a permanent exchange; otherwise A was to take the colt where ever he found him. B took the colt and sold him to C, without notice as to the conditions on which he held him. Soon afterwards, A ascertained that B had stolen the mare, and had no right to sell her; and he delivered her up to her right owner. A then notified C of the conditions of his exchange with B, claimed the colt, and took him away. *Held,* that C cannot maintain trover against A, A never having parted with his property in the colt.

TROVER for a colt. This case was tried before CUTTING, J., and the evidence reported for the full Court to render such judgment as the law and evidence required. The facts appear sufficiently in the opinion of the Court.

*Blake & Garnsey,* for the plaintiff, argued that this was not a case of sale on condition, but of sale and delivery of goods effected by fraud and false representations on the part of the vendor. 2 Parsons on Cont., 27, and note; *Sawyer* v. *Shaw,* 9 Greenl., 47; *Leighton* v. *Stevens,* 22 Maine, 252.

The sale being a fraudulent one, and not a conditional one, the defendant's title cannot avail against the plaintiff, a *bona fide* purchaser without notice. The defendant could revoke the bargain as against Violet, but not against an innocent third party. The sale was only voidable, but not void. *Williams* v. *Given,* 6 Gratt., 268; *Coggin* v. *H. & N. H. Railroad,* 3 Gray, 547.

But if this bargain is held to have been a sale on condition, still the purchase by the plaintiff from Violet, being for value, and without notice of the condition, the title of the plaintiff is good against the defendant. *Hussey* v. *Thornton,* 4 Mass., 405; 2 Kent's Com., 498; *Hill* v. *Freeman,* 3 Cush., 259.

If a sale on condition is valid against a *bona fide* purchaser, any neglect on the part of the first vendor to notify such purchaser of his title, is a waiver of the conditions. In the

case at bar, the evidence is that the defendant failed to notify the plaintiff of the conditions of his sale to Violet, as soon as he had opportunity.

As to the general principles affecting the rescission of contracts on the ground of fraud, the counsel cited *Barton* v. *Stewart*, 3 Wend., 236; *Thayer* v. *Turner*, 8 Met., 550; *Coggill* v. *Railroad*, 3 Gray, 549.

*J. Granger*, for the defendant, contended that the colt was not Violet's property, until the conditions of the bargain were fulfilled, and hence the defendant had a right to reclaim him. *Galvin* v. *Bacon*, 11 Maine, 28; *Parsons* v. *Webb*, 8 Maine, 38; *Bradeen* v. *Brooks*, 22 Maine, 463; *Ripley* v. *Dolbier*, 18 Maine, 382; *Means* v. *Williamson*, 37 Maine, 556; *Leighton* v. *Stevens*, 19 Maine, 154; Parsons on Contracts, 499; *Blanchard* v. *Child*, 7 Gray, 155; *Coggill* v. *Hartf. & N. H. Railroad*, 3 Gray, 545; *Sargent* v. *Metcalf*, 5 Gray, 306; *Lucy* v. *Bundy*, 9 N. H., 298.

After the plaintiff had given up the colt to the defendant, and suffered more than six months to elapse without making any claim to him, it was too late for him to commence and maintain this action.

The opinion of the Court was drawn up by

TENNEY, C. J.—The defendant purchased the colt in question of the plaintiff. Afterwards, in the fall of 1858, he permitted one Violet to take him, who, at the same time, left with the defendant a mare, which he asserted to be his own property. Very soon after Violet became possessed of the colt, he sold him to the plaintiff, for a horse and four dollars in money. In a short time subsequent to this supposed sale, one Thibideaux claimed the mare of the defendant, and, immediately after, the defendant informed the plaintiff thereof, and told him, as he testified, that the trade with Violet was conditional; that he had no doubt the mare was stolen, as the man who owned her had come for her, and was then present with the mare; and, thereupon, the defendant told the plain-

tiff he should take the colt, and he had better look after the horse, which he gave Violet in exchange therefor. The defendant sent through to Madawaska, the residence of Thibideaux, and became satisfied that the mare was stolen, and gave her up to Thibideaux, the owner, and demanded the colt of the plaintiff.

After a delay, at the request of the plaintiff, of about a week, upon further conversation between the parties, the defendant took the colt, whether *with*, or *against*, the consent of the plaintiff, the testimony of the parties is conflicting. The colt was kept by the defendant without any further assertion of right by the plaintiff, till the following spring, when he made a demand therefor, and, on refusal of the defendant to deliver the colt, this suit was instituted.

After the colt was taken by the defendant from the plaintiff's possession, as before stated, the plantiff called upon one Johnson, who had in possession the horse which he let Violet take in exchange; and Johnson, instead of surrendering the horse, satisfied him therefor, "*provided such was the law*," by delivering to him another colt, of the same age with the one in question. The colt, so left with the plaintiff, he kept the most of the winter, when Johnson came and insisted upon taking the colt, (which he had delivered,) on the ground, that the horse was his own property, and took him accordingly, without the plaintiff's consent.

It is not necessary, for a proper disposition of this cause, to determine the question of fact between these parties, whether the colt in question was taken by the defendant, after it was ascertained, and known by both, that the mare was stolen, with or without the plaintiff's consent. There was manifestly an uncertainty in the minds of both, touching the legal title of the property, whether it was in one or the other. If it was taken by the defendant with the plaintiff's consent, a consideration for that consent was wanting to make it effectual as a contract. If no permission was given by the plaintiff, expressed or implied, he surrendered none of his existing rights; and the title of the colt is really the question before

us, independently of what transpired at that time. And herein is a question of fact, to be settled by the Court, from evidence not in harmony, which is, did the defendant, in the transaction between him and Violet, in the fall of 1858, dispose of the colt absolutely, as by a sale, in exchange for the mare, which had been stolen? The plaintiff asserts the affirmative, which is denied by the defendant.

In support of the plaintiff's proposition, is his testimony, that when the parties were together in four or five days after the trade between the plaintiff and Violet, he said to the defendant, that he had got the colt back again; and the latter answered, " all right;" the plaintiff then inquired what kind of a trade he made with the Frenchman, and was answered, that he got this horse, (the one he was driving,) for the colt, and made forty dollars in the trade.

That the colt was not sold absolutely to Violet, but remained the property of the defendant, he testified; that Violet came to him with the mare, and proposed an even exchange of her for the colt; that he concluded to exchange, upon the condition, that, if the mare worked well, (she being a little lame,) and Violet owned her, and no claim came against her, he would give the colt for the mare; that he told Violet he would not deliver the colt until he had tried the mare, and had time to inquire and ascertain whether there were claims against her; that he told him he might take the colt, and he would take time to send to Madawaska, where the man lived, of whom Violet said he purchased the mare, and ascertain if his title was all right, and if he found it so, he would make a formal delivery of the colt to him; but he told him, if there was any trouble about the mare or any claim came against her, or any old bills of sale, it was no trade, and that he should take the colt wherever he could find him, and without process of law.

The deposition of Thibideaux is in the case, and, after stating the loss of the mare and the recovery of her from the defendant, and her description, he states that he was present when a conversation took place between the parties, and that

the defendant told the plaintiff he must look out for the horse he let Violet have, as Violet stole the mare which he let defendant have, and that it was a condition of the trade, that if any claim came against the mare, it was no trade. And, in answer to the inquiry by the plaintiff, whether the plaintiff made any answer to this, the deponent said he did not recollect.

It was admitted by the plaintiff, that Violet would testify, that, when he exchanged horses with the defendant, it was agreed that, if any claim came against the mare, they were to give up the trade, and defendant was to take the colt he let Violet have, wherever he could find him.

It is true, that the defendant does not testify that he told the plaintiff, that he had not conveyed the colt in controversy to Violet, when the first conversation took place between them, after the plaintiff had obtained the colt from Violet, and he spoke of the trade as one which was an unconditional sale. But this was a time unsuited to give a particular account of the transaction, the parties being in separate wagons, and traveling over frozen ground in the evening; and was before any information had been received that the mare was stolen, which, according to defendant's testimony, was unexpected; the worst of his apprehension being, that some claim of a third person upon the mare, by way of mortgage or other contract, might be outstanding, which he may have regarded as a contingency somewhat remote, or he would not have parted with the colt. A disclosure at that time of the state of the title, would have had no effect to prevent a trade, to which the plaintiff was a party, as that had been previously completed.

The suspicion that the mare had been stolen, was communicated to the plaintiff immediately on its being awakened; and the facts stated, as to the exchange, substantially, as the defendant has testified in the case. When it is considered that this evidence is somewhat corroborated by the testimony of Thibideaux, and by what it is admitted would be that of Violet, though the latter should be received with some allow-

ance, we are not satisfied that the sale from the defendant to Violet was absolute. The terms of the exchange had been agreed upon, if the defendant should conclude, after such inquiries as he should think proper to make, and as he proposed to make, that no outstanding title to the mare existed. It was a trade on a condition to be performed by the defendant, and waived by him, as the plaintiff's counsel have argued; but very soon, and before a reasonable time for making those inquiries had elapsed, it was ascertained, to the satisfaction of both parties, that Violet had obtained the mare feloniously, consequently the defendant obtained no title to her, under any state of the facts. *Dame* v. *Baldwin*, 8 Mass., 521.

But under the facts, as we find them, the defendant did not part with his property; he has not relinquished the right to take it wherever he could find it. And the case falls within the principle of *Galvin* v. *Bacon*, 2 Fairfield, (8 Maine,) 28.

According to the agreement of the parties, judgment is to be rendered for the defendant for his costs.

RICE, APPLETON, CUTTING, MAY, and KENT, JJ., concurred.